Margaret Rusch v. City of Dubuque, Appellant.

**Contributory Negligence:** AS MATTER OF LAW: *Defect appearing in walk.* A spike projecting from a plank in a sidewalk, and loose planks in a walk are not of themselves such obvious defects as to charge a pedestrian with notice thereof as a matter of law.

**Notice of Injury:** SUFFICIENTLY DEFINITE. A notice of the place of an accident given a municipal corporation a "plank sidewalk on the east side of W. avenue between P. street and L. avenue, and about 150 feet from said E. avenue, and at a point opposite a building No. 254 on said street," was sufficiently definite, though, according to plaintiff's testimony she was injured at a point 23 feet north of the north line of No. 254, and 181 feet north of E. avenue, especially where plaintiff's evidence showed that the walk for some distance along the street was in substantially the same condition, while that of defendant was to the effect that it was in perfect repair.

*Appeal from Dubuque District Court.*—HON. M. C. MATTHEWS, Judge.

SATURDAY, APRIL 12, 1902.

THE defendant appeals from a judgment against it for damages occasioned by a defective sidewalk.—*Affirmed.*

*Duffy & Nelson* for appellant.

*Bowen & Fitzpatrick* for appellee.

LADD, C. J.—The plaintiff, while walking on the sidewalk along the east side of Windsor avenue, between Lincoln avenue and Providence street, in the city of Dubuque, caught her foot on a spike protruding from the plank one and one-half to two inches, and fell. The evidence tended to show that the boards and the runners beneath them at that place were somewhat decayed, and also other nails sticking up. She had been over the walk several times during the fall, but had taken no notice of its condition. Nor was she observing the walk at the time of the injury. She "walked as usual and looked ahead." Appellant insists that in failing to observe the projecting spike and avoid it she was guilty of negligence, and ought not, for that reason, to recover. All required of plaintiff was that she exercise the care an ordinarily prudent person would in passing over the walk. Though in the day time protruding nails and loose planks, unless out of place, would not necessarily be so obvious as inevitably to arrest the attention of the passing travelers though holes in the way, or obstructions, such as boxes, might be noticeable without effort. But few of the thousands using sidewalks would be likely to think of defects such as these. Pedestrians intent on other matters, and looking out for their general course, usually act on the presumption that the city has performed its duty, and is maintaining its streets in a reasonably safe condition. While bound to make use of their senses and exercise the caution ordinarily displayed by persons of prudence, they are not required at their peril to discover every defect, even though open and visible. *Barnes v. Town of Marcus,* 96 Iowa, 675 ; *Baxter v. City of Cedar Rapids,* 103 Iowa, 599. Clearly the defects in question were not so obvious that the plaintiff may be charged as a matter of law with notice of their existence; and whether, in failing to observe them, she was negligent, was properly left to the jury.

II.   It is contended that the place of the accident was not described with sufficient definiteness in the notice served

on the city.  Section 1051 of the Code simply requires "the
place where such injury occurred" to be indicated.
2       The locality is pointed out in the notice as "a plank
sidewalk on the east side of Windsor Ave., between
Providence street and Lincoln Ave., and about 150 feet from
said Eagle Point Ave., and at a point opposite building No.
254 on said street."  At the corner of Providence street and
Windsor avenue was a double brick house facing forty feet
on the avenue, the inside apartment being No. 254.  Forty-
six feet beyond this was a frame house.  Plaintiff testified,
"The exact place where I was injured was just about half
way between these two houses."  That point was twenty-three
feet north of the north line of No. 254, and one hundred and
eighty-one feet north of Eagle Point avenue.  But the notice
did not purport to give the precise location, nor was it neces-
sary that a survey and plat be made, that the particular
point might be known.  Reasonable certainty as to the place
is all that was required.  The side of the street was given,.
and the defects clearly stated.  The place was about one hun-
dred and fifty feet from Eagle Point avenue,—not exactly
that distance, as insisted by appellant; and a variation of
thirty-one feet cannot be held fatal.  Nor was the place de-
scribed as in front of No. 254, as seems to be thought.  It
was opposite to it along the walk; but which way?  It was
between Lincoln avenue and Providence street, and in quite
a number of cases this has been held in principle sufficiently
definite.  In *City of Lincoln v. O'Brien,* 56 Neb. 761 (77
N. W. Rep. 76), the place was described as the north side of
Q. street between Eighteenth and Twentieth streets.  In *Ly-
man v. Hampshire County,* 138 Mass. 74, the location was.
on a bridge of considerable length.  In *Lowe v. Inhabitants
of Clinton,* 133 Mass. 526, it was fixed as between two houses
50 rods apart.  In each of the above cases, however, a single
defect of the kind described appeared within the limits des-
ignated, and the notices were adjudged sufficient.  Here the
evidence on the part of the plaintiff tended to show that the

walk from Providence street to the frame house was in substantially the same condition, with many boards loose and spikes projecting in several places, while that of defendant was to the effect that the walk was in perfect repair. As the defendant investigated the walk to the extent mentioned and discovered no defects, it was not prejudiced by plaintiff's failure to locate the place within the few feet mentioned. As bearing on the question, see *Owen v. City of Ft. Dodge,* 98 Iowa, 281; *Fopper v. Town of Wheatland,* 59 Wis. 623 (18 N. W. Rep. 514); *Brown v. Town of Southbury,* 53 Conn. 212 (1 Atl. Rep. 819); *Harder v. City of Minneapolis,* 40 Minn. 446 (42 N. W. Rep. 350); *Cross v. City of Elmira,* 86 Hun, 467 (33 N. Y. Supp. 947). *Trost v. City of Casselton,* 8 N. D. 534 (79 N. W. Rep. 1071), relied on by appellant, differs radically from the instant case. There the accident was described as having occurred at the southwest corner of lot 7, at the intersection of two streets, when it happened at a point 100 feet north of the corner. Nothing in the notice indicated in which of the four directions the officers were to look for the scene of injury. In *Weber v. Town of Greenfield,* 74 Wis. 234 (42 N. W. Rep. 101), the notice described the place as at the intersection of the line between sections 17 and 18, with the Beloit road, where several loads of gravel had been dumped to repair the highway. There were heaps of gravel scattered along the road 15 or 20 rods west, and also as far as 20 rods east of the place stated, while the accident occurred 394 feet to the east, and it was held that, owing to the fact that loads of gravel had been dumped at so many places, the inaccurate notice afforded no aid to the authorities in ascertaining if the road was insufficient. In *Miller v. City of Springfield,* 177 Mass. 373 (58 N. E. Rep. 1013), the defect causing the injury was 300 yards from the place described. From the terms of the notice, with the inquiries suggested, in connection with the peculiar defect designated, we think the authorities, with proper diligence, could

have discovered the locality of the projecting spike and loose plank alleged to have occasioned the injury with as much certainty as possible without an accurate survey. If so, the notice was sufficiently definite.—AFFIRMED.